UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
ANTHONY LEWIS,                      )
                                    )
            Plaintiff,              )
                                    )
    v.                              )   Civil Action No. 09-0264 (RBW)
                                    )
DRUG ENFORCEMENT ADMINISTRATION,    )
                                    )
            Defendant.              )
_____ )

**MEMORANDUM OPINION**

The plaintiff brings this action against the Drug Enforcement Administration ("DEA") seeking judicial review under the Administrative Procedure Act ("APA"), *see* 5 U.S.C. § 702 (2006), regarding the seizure of two vehicles, along with their contents, and the administrative forfeiture of the vehicles by the DEA.[1] This matter is before the Court on the defendant's motion to dismiss and the plaintiff's motion for injunctive relief. For the reasons discussed below, the defendant's motion will be granted and the plaintiff's motion will be denied.

I. BACKGROUND

On August 17, 1993, the plaintiff was arrested at his residence in Tampa, Florida, at which time two vehicles and the contents thereof were seized by DEA Special Agents Tom Feeney and Dale Van Dorple, two Tampa Police Department officers, and a Hillsborough

---

[1] Under the APA, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702 (2006).

1

County Deputy Sheriff. Complaint ("Compl.") ¶¶ 3-4. The vehicles were described as a 1969 Cadillac DeVille convertible (VIN E9259095) ("DeVille") and a 1987 Chevrolet Blazer S-10 (VIN 1G8CS18R2G8116399) ("Blazer"). *See id.* ¶¶ 3-5; Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss ("Def.'s Mem.") at 2, Declaration of Terrence J. King ("King Decl.") ¶¶ 4(a), 5(a). The personal property inside the vehicles allegedly included jewelry, clothing, and tools. *See* Compl., Ex. A (Itemized List).

According to the plaintiff, he was provided neither a warrant authorizing these seizures, nor an inventory list of the vehicles' contents. Compl. ¶¶ 5-6. The plaintiff contends that the "vehicles were never used to facilitate any illegal narcotics activities, nor . . . [were they] derived from proceeds of illegal narcotics dealing." *Id.*, Exhibit ("Ex.") B (Affidavit of Anthony Lewis) ("Pl.'s Aff.") ¶ 5. The plaintiff has "remained incarcerated [by] the federal Government [since] August 17, 1993," and allegedly he never "receive[d] notice of the seizure" of his property. Compl. ¶ 8. "The [p]laintiff was later convicted and sentenced in the [United States] District Court [for the] Middle District of Florida, Tampa Division," *id.* ¶ 17, and is serving a term of life imprisonment, *see United States v. Lewis*, No. 8:93-CR-249-RAL-1 (M.D. Fla. filed Sept. 16, 1993).[2]

---

    [2] Remote access to documents filed in criminal cases in the United States District Court for the Middle District of Florida prior to November 1, 2004, is not available. With one exception [#228], docket entries in the plaintiff's criminal case prior to July 23, 1997, do not appear on the court's electronic docket. A docket entry dated August 12, 1993 [#502] notes that the first 278 docket entries, including the criminal complaint against the plaintiff [#1], minutes of the sentencing [#13], and the judgment [#14], appear on the original paper docket sheet, but does not indicate the dates on which these documents were filed.

A. *Administrative Forfeiture Proceedings*

1. The DeVille

DEA employees in its Tampa, Florida office "prepared and submitted a forfeiture report," which either "[a]n attorney or paralegal reviewed . . . to determine if the DEA field office provided adequate information to support administrative forfeiture proceedings against the property." Def.'s Mem., King Decl. ¶ 4(a). This process "included a legal review of the evidence that existed to seize the . . . DeVille." *Id.* Based on this review, "the DEA accepted [the] case for administrative forfeiture." *Id.*

Pursuant to 19 U.S.C. § 1607(a) (2006), the DEA sent two written notices of the DeVille's seizure by certified mail, along with domestic return receipts, to the plaintiff at his Tampa, Florida residence. Def.'s Mem., King Decl. ¶ 4(b)-4(c); *see id.*, Exs. 1 and 3 (Notices of Seizure dated October 8, 1993).[3] Someone signed each return receipt on October 18, 1993. *Id.*,

---

[3] The defendant represents that the plaintiff's property was seized and forfeited in accordance with the administrative forfeiture procedures set forth in 19 U.S.C. § 1607 (2006), rather than the provisions of the Civil Asset Seizure Reform Act of 2000, *see* 18 U.S.C. § 983 (2006), which applies to forfeiture proceedings initiated after August 23, 2000, Def.'s Mem. at 1 n.1.

Generally, all vehicles "which are used, or are intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment of" controlled substances or raw materials intended for illegal drug trade are subject to forfeiture. 21 U.S.C. § 881(a) (2006). Under the earlier forfeiture statute, which governs the forfeiture in this case, if the value of a seized vehicle does not exceed $500,000, the following provision applies:

> [T]he appropriate . . . officer shall cause a notice of the seizure of such [vehicle] and the intention to forfeit and sell or otherwise dispose of the same according to law to be published for at least three successive weeks in such manner as the Secretary of the Treasury may direct. Written notice of seizure together with information on the applicable procedures shall be sent to each party who appears to

(continued...)

Exs. 2 and 4 (domestic return receipts for certified mail). In addition, the DEA sent a notice of the seizure to the plaintiff at the Pinellas County Jail in Clearwater, Florida. *Id.* ¶ 4(d); *see id.*, Ex. 5 (Notice of Seizure dated October 8, 1993). This third notice was returned to the DEA by the United States Post Office, with the envelope "stamped 'RETURNED TO SENDER' and marked 'MOVED. LEFT NO ADDRESS.'" *Id.* ¶ 4(d); *see id.*, Ex. 6.

The DEA provided notice of "the seizure of the property . . . in USA TODAY, a newspaper of general circulation in the Middle District of Florida and the District of Columbia." Def.'s Mem., King Decl. ¶ 4(e). The notice was "published once each week for three successive weeks: October 20 and 27, and November 3, 1993." *Id.* ¶ 4(e); *see id.*, Ex. 7 (Legal Notices). Both "[t]he published and mailed notices explained the option of filing a claim and cost bond, or an affidavit of indigency in lieu of the cost bond, with the DEA Forfeiture Counsel in order to contest the forfeiture action in United States District Court." *Id.* ¶ 4(e). The DEA received neither a claim nor a cost bond by the November 9, 1993 deadline, *id.*, and on November 26, 1993, "the DEA forfeited the . . . DeVille . . . to the United States" pursuant to 19 U.S.C. § 1609 [(2006)]. *Id.* ¶ 4(f); *see id.*, Ex. 8 (Declaration of Forfeiture dated November 26, 1993).

### 2. The Blazer

As was the case with the DeVille, DEA employees in its Tampa office "prepared and submitted a forfeiture report," and upon its review, which "included a legal review of the evidence that existed to seize the . . . Blazer," the case was "accepted . . . for administrative

---

[3](...continued)
    have an interest in the seized [vehicle].

19 U.S.C. § 1607(a) (2006). DEA Special Agents "are authorized and designated to seize such property as may be subject to seizure." 21 C.F.R. § 1316.72.

forfeiture." Def.'s Mem., King Decl. ¶ 5(a). On November 1, 1993, the DEA sent by certified mail, along with return receipts, three notices of seizure to the plaintiff – one to the plaintiff's Tampa, Florida residence, one to the plaintiff at the Pinellas County Jail, and one to the plaintiff's attorney. *Id.* ¶¶ 5(c)-(f); *see id.*, Exs. 19, 21 and 23 (Notices of Seizure dated November 1, 1993). The DEA also mailed a fourth notice to Henry L. Lewis at the same Tampa, Florida address as the plaintiff's residence. *Id.* ¶ 5(f); *see id.*, Ex. 25 (Notice of Seizure dated November 1, 1993). With the exception of the notice mailed to the Pinellas County Jail, which the United States Postal Service returned, *id.*, Ex. 22, an individual signed for each of the other three notices, *id.*, Exs. 20, 24, and 26 (domestic return receipts for certified mail).

The DEA "published in USA TODAY, a newspaper of general circulation in the Middle District of Florida and the District of Columbia," a notice of the seizure "once each week for three successive weeks: November 10, 17, and 24, 1993." Def.'s Mem., King Decl. ¶ 5(g) & Ex. 27 (Legal Notices). Once again the DEA did not receive a claim or cost bond by the November 30, 1993 deadline, and "the DEA forfeited the . . . Blazer . . . to the United States" on December 17, 1993. *Id.* ¶¶ 5(g)-(h) & Ex. 28 (Declaration of Forfeiture dated December 17, 1993).

### B. Criminal Action No. 93-249

The plaintiff filed in his criminal case a Petition for Writ of Replevin "in an attempt to obtain judicial review of the . . . DEA's seizure and administrative forfeiture of his vehicles and the contents of his vehicles." Compl. ¶ 16; Def.'s Mem., King Decl., Ex. 9 (Petition for Writ of Replevin, *Lewis v. United States*, No. 93-249-CR-T-21(B) (M.D. Fla. June 9, 1994)).[4]

---

⁴ The DeVille and the Blazer already had been forfeited, and the United States took the position that "the only remaining issue for evidentiary hearing . . . would be limited to the
(continued...)

According to the plaintiff, his property was seized and forfeited without probable cause, proper notice and hearing, and otherwise was taken in violation of law. *See generally*, Def.'s Mem., King Decl., Ex. 9. The presiding judge in the plaintiff's criminal case held a hearing on January 30, 1997, and denied the petition on March 24, 1997.[5] Compl. ¶ 20. That proceeding has been summarized by another Judge of the Middle District of Florida as follows:

> Judge Nimmons held that Lewis failed to establish that any of the fourteen items of personal property at issue were ever contained within either [the DeVille or the Blazer] at the time those vehicles were seized on August 17, 1993, or that the items of personal property were ever seized from the vehicles by any Government agent. Judge Nimmons further held that the Government had established by a preponderance of the evidence that Detective Tim Lovett of the Hillsborough County Sheriff's Office, Detective Rick Olewinski of the Tampa Police Department, and Special Agents Dale Van Dorple and Tom Feeney with the [DEA] did not remove or steal any of the fourteen items of personal property from either of the vehicles on August 17, 1993, or in the days following, in connection with the processing of the vehicles for administrative seizure by the [DEA].

*See* Def.'s Mem., King Decl., Ex. 17 (Order, *Lewis v. United States*, No. 95-580-CIV-T-24E (M.D. Fla. July 15, 1997)) at 2 (internal citations omitted). According to the plaintiff, Judge Nimmons "did not effect review of the . . . DEA's seizure and administrative forfeiture" of the vehicles. Compl. ¶ 20.

---

[4](...continued)
personal property contained within the vehicle[s]." Def.'s Mem., King Decl., Ex. 16 (Response to Lewis' Petition for Writ of Replevin and United States of America's Request for an Evidentiary Hearing, *United States v. Lewis*, No. 93-249-CR-T-21(B) (M.D. Fla. Sept. 13, 1996)) at 2.

[5] The plaintiff alleges that he had filed two motions for return of property in his criminal case, one on June 9, 1994 and another on July 7, 1994, Compl. ¶ 19, and that both motions were denied, *id.* ¶ 20. It is not clear from the record whether the second motion was also addressed at the January 30, 1997 hearing.

## C. Civil Action No. 95-580

The plaintiff "filed a civil action against the . . . DEA and others . . . in the . . . Middle District of Florida, Tampa Division, in Case Number 95-[580]-civ-T-24E, for the illegal seizure and forfeiture" of the DeVille and the Blazer. Compl. ¶ 18; *see Lewis v. United States*, No. 8:95-580-SCB (M.D. Fla. filed Apr. 14, 1995); *see also* Def.'s Mem., King Decl., Ex. 10 (Amended Complaint, *Lewis v. United States*, No. 95-580-CIV-T-24E (M.D. Fla. May 30, 1995)). The United States Court of Appeals for the Eleventh Circuit summarized these proceedings as follows:

> Lewis . . . filed this civil action seeking declaratory, injunctive, and monetary relief against Tom Feeney and Dale Van Dorple, agents of the [DEA], Jack Fernandez, the federal prosecutor in [his] criminal case, and the United States. Lewis' amended complaint alleged that (1) Feeney and Van Dorple, in connection with their arrest of Lewis, seized and disposed of Lewis' [DeVille and Blazer], and personal property therein, illegally and without a hearing, and (2) Fernandez failed to prevent Feeney and Van Dorple's illegal actions by exercising his exclusive authority to begin forfeiture proceedings against Lewis. Lewis sought to hold Feeney, Van Dorple, and Fernandez liable under Bivens [v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. 388 (1971)], alleging that the seizure of his property without a warrant violated the Fourth Amendment, and the forfeiture of his property without notice or a hearing violated the Fifth Amendment. Lewis also claimed that Feeney, Van Dorple, and Fernandez were liable under the [Federal Tort Claims Act ("FTCA")], based upon their violation of Florida law regarding the illegal conversion of property. Lewis sought to hold the United States liable under the FTCA pursuant to the theory of respondeat superior.
>
> * * *
>
> On August 26, 1996, the district court granted the United States' motion for summary judgment on Lewis's FTCA claim, finding that the seizure of his property fit within the ambit of 28 U.S.C. § 2680(c), and exemption from the FTCA's general waiver of sovereign immunity in cases where property is seized pursuant to law

7

enforcement purposes. In regard to Lewis' <u>Bivens</u> claims against Van Dorple, Feeney, and Fernandez, the district court ruled as follows: (1) granted summary judgment for the defendants on Lewis' Fourth Amendment claim, <u>finding that the confiscation of Lewis' property was supported by probable cause and occurred pursuant to a valid warrant</u>; (2) granted summary judgment for the defendants on Lewis' Fifth Amendment claim regarding the forfeiture of two of his automobiles, <u>where proper notice had been issued</u>; and (3) granted summary judgment for Fernandez, but denied summary judgment for Van Dorple and Feeney on Lewis' Fifth Amendment claim regarding the forfeiture of his personal property within the automobiles, finding that material issues of fact remained disputed regarding [their] actions, but that Lewis had failed to establish a causal connection between the loss of his personal property and any actions of Fernandez.

*Lewis v. Feeney*, No. 98-2328, Slip Op. at 2-3, 4-5 (11th Cir. Aug. 31, 1999) (per curiam) (emphasis added).

Based on Judge Nimmons' earlier denial of the plaintiff's petition for writ of replevin, Van Dorple and Feeney moved to dismiss the plaintiff's remaining Fifth Amendment claim on the ground that the claim was barred under the doctrine of collateral estoppel. *See* Def.'s Mem., King Decl., Ex. 17 (Order, *Lewis v. United States*, No. 95-580-CIV-T-24(E) (M.D. Fla. July 15, 1997)) at 1. The plaintiff did not file an opposition to their motion, *see id.*, and the court granted the motion, concluding that "[t]he issues raised by Plaintiff's instant Fifth Amendment due process claim relating to the alleged personal property contained in his two seized vehicles were adjudicated in Case No. 93-249-Cr-T-21B, . . . [and the] Plaintiff is therefore barred from relitigating those issues here," *id.* at 2-3. The plaintiff did not appeal the ruling. *Lewis v. Feeney*, No. 98-2328, Slip Op. at 5 (11th Cir. Aug. 31, 1999) (per curiam).

### D. The Plaintiff's Complaint In This Case

The plaintiff summarizes the grounds for this action and the relief he demands as follows:

> This is a civil action pursuant to the Administrative Procedure Act (APA) against the [DEA] for illegally, unlawfully, arbitrarily, capriciously, maliciously, and as a result of fraud and fraudulent concealment, seiz[ing] and administratively forfeit[ing his] property . . . . The [p]laintiff seeks judicial review of the DEA's administrative seizure and forfeiture of his property in equity as an independent action[, and he asks] the court to hold that the DEA's seizure and forfeiture . . . was erroneous and unlawful, then set aside the agency's action.

Compl. at 1. As a result of the DEA's actions, the plaintiff asserts that he "has suffered the loss of his property [and] loss of his property interest [in] violation of his Fourth Amendment right," and in "violation of his protected liberty interest" under the Fifth Amendment. *Id.* ¶ 29.[6]

The plaintiff's Fourth Amendment claim arises from the DEA's seizure of the DeVille and the Blazer and their contents, and the administrative forfeiture of the vehicles, on the ground that the agency "lacked jurisdiction and authority" to conduct the seizure "without first obtaining a transfer and/or takeover order from the State court which allegedly issued seizure warrants." Compl. ¶ 30(A). The plaintiff further asserts that the DEA "lacked probable cause to seize and attempt forfeiture proceedings" due to the absence of "evidence or facts to support that the plaintiff's property was derived from, associated with, or used for any illegal activity, or failing to show a nexus between the plaintiff's property and illegal narcotics activity in a drug case." *Id.* ¶ 30(B).[7] He also contends that the DEA violated his Fifth Amendment right to due process

---

[6] The plaintiff also alleges violations of federal statutory law and Florida law. Compl. ¶ 29.

[7] According to the plaintiff, the vehicles were used "for advertisement purposes and
(continued...)

9

because it "failed to provide notice to the plaintiff and an opportunity to contest the seizure and forfeiture of his [vehicles]." *Id.* ¶ 30(C). Lastly, the plaintiff contends that the DEA "committed fraud and fraudulent concealment" in effecting this "unlawful seizure and forfeiture." *Id.* ¶ 30(D).

The plaintiff demands declaratory judgment and injunctive relief. Compl. ¶ 31.[8] In addition, he demands compensatory damages of $50,000.00 for the vehicles and their contents, *id.* ¶ 31(C)(1), and punitive damages totalling $3,000,000.00 to redress the alleged violations of his Fourth and Fifth Amendment rights, *id.* ¶ 31(C)(2), the "loss of the plaintiff's business interest" in and the sentimental value of the vehicles, *id.* ¶ 31(C)(3), and for the "emotional distress, anxiety, discomfort, and vexation [he] has suffer[e]d in attempting to have his vehicles and the contents of his vehicles returned to him," *id.* ¶ 31(C)(4).

## II. DISCUSSION

### A. Dismissal Under Rule 12(b)(6)[9]

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests whether the plaintiff properly has stated a claim upon which relief may be granted. *See, e.g., Woodruff v.*

---

[7](...continued)
other matters associated with [his] family's business," Compl., Ex. B (Pl.'s Aff.) ¶ 8, an auto body repair shop, *id.* ¶ 7.

[8] The plaintiff numbered two paragraphs of the complaint as paragraph 31, one beginning on page 11 (requesting declaratory judgment), and another beginning on page 14 (requesting injunctive relief).

[9] Ordinarily, if "matters outside the pleadings are presented to and not excluded by the court" on a Rule 12(b)(6) motion, "the motion must be treated as one for summary judgment under Rule 56." FED. R. CIV. P. 12(d). The Court need not convert the defendants' motion to dismiss in this case, however, because the materials on which the Court relies either are referred to in the complaint itself or are matters of which the Court may take judicial notice.

*DiMario*, 197 F.R.D. 191, 193 (D.D.C. 2000). For a complaint to survive a Rule 12(b)(6) motion, it need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief," FED. R. CIV. P. 8(a)(2), in order to "give the defendant fair notice of what the claim is and the grounds on which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). "Although detailed factual allegations are not necessary to withstand a Rule 12(b)(6) motion to dismiss, to provide the grounds of entitlement to relief, a plaintiff must furnish more than labels and conclusions or a formulaic recitation of the elements of a cause of action." *Hinson ex rel. N.H. v. Merritt Educ. Ctr.*, 521 F. Supp. 2d 22, 27 (D.D.C. 2007) (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted). Or, as the Supreme Court more recently stated, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, __ U.S. __, __, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570). The complaint must be construed in the light most favorable to the plaintiff and "the court must assume the truth of all well-pleaded allegations." *Warren v. Dist. of Columbia*, 353 F.3d 36, 39 (D.C. Cir. 2004). Generally, on a Rule 12(b)(6) motion, the Court is limited to considering "only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which we may take judicial notice." *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).

The Federal Rules of Civil Procedure provide that a party may assert an affirmative defense by motion in its initial response to a complaint. FED. R. CIV. P. 12(b). Res judicata and collateral estoppel are affirmative defenses. *Blonder Tongue Labs., Inc. v. Univ. of Illinois Found.*, 402 U.S. 313, 350 (1971); *Stanton v. Dist. of Columbia Court of Appeals*, 127 F.3d 72,

11

76 (D.C. Cir. 1997) ("Res judicata is an affirmative defense that may be lost if not pleaded in the answer[.]"); *Nat'l Treasury Emps. Union v. Internal Revenue Serv.*, 765 F.2d 1174, 1176 n.1 (D.C. Cir. 1985) ("Issue preclusion is an affirmative defense [which] may be expressly waived or forfeited through failure to raise it at a proper time." (internal citations omitted)). These defenses may be raised by motion under Rule 12(b)(6) where they "can either be established from the face of the complaint, matters fairly incorporated within it, and matters susceptible to judicial notice." *Felter v. Salazar*, 679 F. Supp. 2d 1, 4 (D.D.C. 2010) (internal quotation marks and citation omitted); *Sheppard v. Dist. of Columbia*, __ F. Supp. 2d __, __, 2011 WL 710211, at *4 n.3 (D.D.C. Feb. 22, 2011) ("Res judicata may be raised in a Rule 12(b)(6) motion to dismiss for failure to state a claim when the defense appears on the face of the complaint and any materials of which the court may take judicial notice."). The court may take judicial notice of public records from other court proceedings. *See Covad Commc'ns. Co. v. Bell Atl. Corp.*, 407 F.3d 1220, 1222 (D.C. Cir. 2005).

### B. Claim Preclusion and Issue Preclusion

The defendant moves to dismiss the complaint in its entirety on the grounds that the claims "against the DEA regarding the alleged improper seizure and forfeiture of [the plaintiff's] property . . . have already been litigated," Def.'s Mem. at 11, and that the issues presented "have already been decided by a court of competent jurisdiction," *id.* at 13.

#### 1. *Res Judicata* (Claim Preclusion)

"*Res judicata* plays a central role in advancing the 'purpose for which civil courts have been established, the conclusive resolution of disputes within their jurisdictions.'" *Apotex, Inc. v. FDA*, 393 F.3d 210, 217 (D.C. Cir. 2004) (quoting *Montana v. United States*, 440 U.S. 147,

153 (1979)). *Res judicata* (claim preclusion) bars a subsequent lawsuit "if there has been prior litigation (1) involving the same claims or cause of action, (2) between the same parties or their privies, and (3) there has been a final, valid judgment on the merits, (4) by a court of competent jurisdiction." *Porter v. Shah*, 606 F.3d 809, 813-14 (D.C. Cir. 2010) (citations and internal quotation marks omitted). Essentially, the doctrine "prevents a party from filing a new civil action which is based on the same operative facts as underlay a previously-litigated civil action." *Morton v. Locke*, 387 F. App'x 1, 1 (D.C. Cir. 2010) (per curiam) (citations omitted). "Whether two cases implicate the same cause of action turns on whether they share the same 'nucleus of facts.'" *Drake v. FAA*, 291 F.3d 59, 66 (D.C. Cir. 2002) (citing *Page v. United States*, 729 F.2d 818, 820 (D.C. Cir. 1984)). In determining whether two cases share a nucleus of facts, courts consider "whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Apotex*, 393 F.3d at 217 (citations and internal quotation marks omitted).

The defendant contends that the plaintiff's "claims against the DEA regarding the alleged improper seizure and forfeiture of his property must be dismissed under the doctrine of *res judicata* because such claims have already been litigated against Defendant . . . before the [United States] District Court for the Middle District of Florida." Def.'s Mem. at 11. The plaintiff counters that "the present civil action does not contain claims [or] defendants that were contained in the previous civil action." Plaintiff's Arguments with Points and Authorities in Support of Opposition to the Defendant's Motion to Dismiss ("Pl.'s Opp'n") at 13. Rather, he contends, he brings this action "against the DEA, the agency," while the "Fourth and Fifth

13

Amendment claims raised in the . . . previous civil action were against the United States, DEA agents and the prosecuting attorney." *Id.* Further, the plaintiff purports to raise for the first time in this action new claims, specifically, the DEA's "lack[] [of] jurisdiction and authority to seize and forfeit his vehicles and property," its alleged "fraud and fraudulent concealment in establishing probable cause to seize and forfeit" the vehicles and their contents, and its "fail[ure] to comply with the requirements of Title 19 U.S.C. §[§] 1602-1604 prior to the seizure and forfeiture of the plaintiff's vehicles." Pl.'s Opp'n at 14.[10] For these reasons, the plaintiff argues that his claims are not barred under the doctrine of *res judicata*. *Id*. He is mistaken.

The current civil action and the prior action in the Middle District of Florida involve the same cause of action – the operative facts are those arising out of the August 17, 1993 seizure of the DeVille, the Blazer, and the property contained in those vehicles, as well as the subsequent administrative forfeiture of the vehicles and their contents by the DEA. Moreover, there can be no doubt that the United States District Court for the Middle District of Florida, the same district where the plaintiff was arrested and where the seizure and forfeiture occurred, is a court of competent jurisdiction which decided the merits of the plaintiff's prior challenges to the seizure and forfeiture of his property.

Although the plaintiff names as the defendant in this action a party not named in the prior action, the DEA is in privity with the defendants sued in the prior action. "[F]or purposes of *res judicata*, privity exists between officers of the same government," *Lindsey v. Dist. of Columbia*, 609 F. Supp. 2d 71, 77 (D.D.C. 2009) (citing *Sunshine Anthracite Coal v. Adkins*, 310 U.S. 381,

---

[10] The plaintiff numbered two pages as page 14. The Court's citation is to the first of those two pages.

402 (1940)), and the prior rulings in favor of the United States and DEA Special Agents Feeney and Van Dorple are binding as to the DEA itself. *See Sunshine Anthracite Coal*, 310 U.S. at 402-03 ("[A] judgment in a suit between a party and a representative of the United States is *res judicata* in relitigation of the same issue between that party and another officer of the government."); *Mervin v. Fed. Trade Comm'n*, 591 F.2d 821, 830 (D.C. Cir. 1978) (concluding that the plaintiff was barred from pursuing the same reduction-in-force claim before the Federal Trade Commission that he had pursued previously against the Civil Service Commission). The defendants named in the two actions, then, are considered the same parties.

      The plaintiff cannot avoid the preclusive effect of the Florida district court's rulings in the prior action by presenting in this action new legal theories for relief. "[R]es judicata . . . bars relitigation not only of matters determined in a previous litigation but also ones that [the plaintiff] could have raised." *Natural Res. Def. Council, Inc. v. Thomas*, 838 F.2d 1224, 1252 (D.C. Cir. 1988); *Tutt v. Doby*, 459 F.2d 1195, 1197 (D.C. Cir. 1972) ("If the doctrine of *res judicata* applies, both parties are concluded, not only as to things which were determined but as to all matters which might have been determined as well."); *Middlebrooks v. Medstar Health, Inc.*, No. 10-1519, 2010 WL 5373939, at *2 (D.D.C. Dec. 22, 2010) (finding no significance in the fact that the plaintiff's prior cases in the Superior Court of the District of Columbia asserted claims under the District of Columbia Human Rights Act and the current case includes a claim under 42 U.S.C. § 1981 because the plaintiff was "barred from litigating not only claims that were actually litigated but also those that could have been litigated in the first action"). The fact that the plaintiff did not present his additional legal theories in the prior suit is immaterial. "Under the doctrine, the parties to a suit and their privies are bound by a final judgment and may

not relitigate any ground for relief which they already have had an opportunity to litigate *even if they chose not to exploit that opportunity* whether the initial judgment was erroneous or not." *Hardison v. Alexander*, 655 F.2d 1281, 1288 (D.C. Cir. 1981) (emphasis added).

For all of the reasons set forth above, the Court concludes that the plaintiff's claims in this case are barred by the doctrine of *res judicata*.[11]

### 2. Collateral Estoppel (Issue Preclusion)

"Along with the doctrine of claim preclusion or *res judicata*, issue preclusion aims to avert needless relitigation and disturbance of repose, without inadvertently inducing extra litigation or unfairly sacrificing a person's day in court." *Otherson v. Dep't of Justice*, 711 F.2d 267, 273 (D.C. Cir. 1983). Under the doctrine of collateral estoppel (issue preclusion), "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Allen v. McCurry*, 449 U.S. 90, 94 (1980). In *Yamaha Corp. of Am. v. United States*, 961 F.2d 245, 254 (D.C. Cir. 1992), *cert. denied*, 506 U.S. 1078 (1993), the District of Columbia Circuit sets forth the following standard for establishing the preclusive effect of a prior holding:

> First, the same issue now being raised must have been contested by the parties and submitted for judicial determination in the prior case. Second, the issue must have been actually and necessarily determined by a court of competent jurisdiction in that prior case. Third, preclusion in the second case must not work a basic unfairness to the party bound by the first determination. An example of such unfairness would be when the losing party clearly lacked any incentive to litigate the point in the first trial, but the stakes of the second trial are of a vastly greater magnitude.

---

[11] The plaintiff's FTCA claim, *see* Compl. ¶ 27 & Ex. L (Claim for Damage, Injury or Death dated October 4, 2004), also is barred by the doctrine of *res judicata*.

*Id.* (internal citations and footnote omitted).

The defendant argues that "the issues raised in Plaintiff's Complaint have already been decided by a court of competent jurisdiction and therefore this Court is barred from deciding them under the doctrine of collateral estoppel." Def.'s Mem. at 13. The plaintiff counters that "the present civil action does not contain claims []or defendants that were contained in the previous civil action filed in the Middle District of Florida," Pl.'s Opp'n at 14, pointing to the new defendant, the DEA, and his new legal theories offered as the basis for the relief he is seeking, to support his argument that collateral estoppel does not bar this action. *See id.* at 14-15. Again, the plaintiff is mistaken.

The Florida district court described the issues presented by the plaintiff in the prior civil action as follows:

> Regarding the seizures, Plaintiff makes three claims. First, he claims that his property was seized in violation of the Fourth Amendment, stating in support that he never saw a warrant for the seizure of the items. Second, Plaintiff claims that his property was seized without adequate due process, in contravention of the Fifth Amendment. Third, Plaintiff asserts a federal tort claim of deprivation of his property based upon a state law claim of conversion.

Def.'s Mem., King Decl., Ex. 15 (Order, *Lewis v. United States*, No. 95-580-CIV-T-24E (M.D. Fla. Aug. 22, 1996)) at 6. The court then construed the claims "as under *Bivens* . . . and as pursuant to the [FTCA]." *Id.* at 6-7.

The Florida district court then determined that the United States was not liable under the FTCA for any injury arising from the seizure of the plaintiff's vehicles. *Id.* at 7. Because the FTCA "exempts any claim based on the detention of goods by any federal law enforcement officer, [and] extends to officers in other agencies performing their proper duties," the court

17

deemed the plaintiff's FTCA claim to be "without merit, and the United States [was] dismissed as a Defendant in [that] action." *Id.*

In resolving the *Bivens* claims brought against DEA Special Agents Van Dorple and Feeney, and their qualified immunity defense, the Florida district court found it "clear from the record that a warrant to search Plaintiff's premises was validly issued," *id.* at 9, thus resolving his Fourth Amendment claim based on the lack of probable cause or the absence of a warrant, *id.* at 10. Further, that Florida district court found not only that the plaintiff "raise[d] no meritorious due process claims regarding the forfeiture of his vehicles," *id.* at 11, but also that his claims against the agents with respect to the contents of the vehicles were barred under the doctrine of collateral estoppel based on Judge Nimmons' earlier determination, following an evidentiary hearing, that the agents neither removed nor stole any of the items allegedly found in the vehicles at the time of their seizure, Def.'s Mem., King Decl., Ex. 17 (Order, *Lewis v. United States*, No. 95-580-CIV-T-24E (M.D. Fla. July 15, 1997)) at 2. In short, the Florida district court determined that no violation of the plaintiff's Fourth or Fifth Amendment rights occurred. The plaintiff cannot avoid the consequences of the Florida district court's rulings by raising new legal theories in a subsequent lawsuit where, as here, he could have raised such theories in the prior action. *See Hall v. Clinton*, 285 F.3d 74, 81 (D.C. Cir. 2002).

A plaintiff can avoid the preclusive effect of an earlier judicial decision if he can demonstrate that preclusion would "work a basic unfairness" on him, or that he "lacked any incentive to litigate the [issues] in the [prior proceedings]," or that he was otherwise denied a full and fair opportunity to litigate these issues previously. *Yamaha*, 961 F.2d at 254. However, the plaintiff presents no such arguments, and given his persistence in seeking the return of his

18

property, both in the criminal proceedings and subsequent civil proceedings in the Middle District of Florida, coupled with the rulings rendered in those proceedings, the Court finds that invoking the preclusive impact of collateral estoppel in this case is not at odds with the limitations articulated in *Yamaha*. The Court therefore concludes that the issues presented in this civil action are barred by the doctrine of collateral estoppel.

### III. CONCLUSION

The Court concludes that the doctrines of *res judicata* and collateral estoppel bar relitigation of the claims and issues presented in this case due to the proceedings that were conducted in the United States District Court for the Middle District of Florida.[12] Accordingly, the Court grants the defendants' motion to dismiss and denies the plaintiff's motion for injunctive relief.[13]

REGGIE B. WALTON
United States District Judge

DATE: April 15, 2011

---

[12] In light of these rulings, the Court will not address the defendants' alternative arguments for dismissal.

[13] This Memorandum Opinion accompanies the Order issued on March 31, 2011, and the Final Order issued contemporaneously, granting the defendant's motion to dismiss and denying the plaintiff's motion for injunctive relief.